UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| MICHAEL D. WATERMAN, | **CLASS ACTION** |
| And | |
| KELLY ANNE WATERMAN, | |
| PLAINTIFFS | CIVIL ACTION NO. 3:10-cv-514-S |
| | *ELECTRONICALLY FILED* |
| v. | *JURY TRIAL DEMANDED* |
| JPMORGAN CHASE BANK, N.A. | |
| **Serve:** Any agent<br>416 W Jefferson<br>Louisville, KY 40202 | |
| DEFENDANT | |

# CLASS ACTION COMPLAINT

Plaintiff, Michael D. Waterman and Kelly Anne Waterman, individually and as representatives of a Class of similarly situated individuals, brings this Complaint against JPMorgan Chase Bank, National Association ("Defendant" or "Chase Bank") and allege the following:

## INTRODUCTION

1.  This is an action brought on behalf of Plaintiffs individually and on behalf of a class of all persons who have a home equity line of credit ("HELOC") and received notice that they would not be able to draw additional amounts on their lines of credit, or who were unable to draw additional amounts, as a result of a change in collateral valuation by Chase Bank in the Commonwealth of Kentucky.

2.     Chase Bank's actions constitute a breach of contract and violations of the federal Consumer Credit Protection Act, commonly known as the Truth-in-Lending Act, and Regulation Z.

3.     Chase Bank has engaged in a practice and pattern of reducing the credit limits on HELOCs in an attempt to limit its credit exposure by breaching its duties to consumer borrowers who obtained credit from Chase Bank.

4.     Chase Bank's actions will continue to threaten the personal finances of all affected individuals within the Commonwealth of Kentucky.

5.     Plaintiffs and each member of the purported class had a HELOC for which Chase Bank reduced the available credit in an unlawful manner. Therefore, Plaintiffs bring this class action on behalf of themselves and the putative class for actual damages, statutory damages, and attorneys' fees under the Truth-in-Lending Act, 15 U.S.C. §1640(a), damages for breach of contract, actual and punitive damages under the Kentucky Consumer Protection Act, K.R.S. § 367.110 *et seq*, and equitable relief under common law principles.


## PARTIES

6.     Plaintiffs are citizens of the Commonwealth of Kentucky who resides at 17506 Curry Branch Road, Louisville, KY 40245.

7.     At all times relevant hereto, Plaintiffs have been borrowers under a home equity line of credit agreement ("HELOC") with Chase Bank.

8.     Plaintiffs bring this action on their own behalf and on behalf of the following class ("the Class") of persons in the Commonwealth of Kentucky:

    (a) who had a HELOC with Defendant; and

    (b) whose HELOC was reduced or suspended by Defendant because Defendant concluded that there had been "a substantial decline in the value of the property securing the Account," or words of similar effect, or whose HELOCs were reduced on the same grounds as those who received such a letter, regardless of the actual receipt of such a letter.

Excluded from the Class are the Defendant; officers, directors or employees of Defendant; any entity in which Defendant has a controlling interest; the affiliates, legal representatives, attorneys, heirs or assigns of Defendant; and any federal, state, or local governmental entity; persons who properly execute and file a timely request for exclusion from the class; the legal representatives, successors or assigns of any such excluded persons; and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staffs.  Plaintiffs reserve the right to modify or amend this Class definition if discovery and/or further investigation so necessitate.

9.    Defendant, Chase Bank, is a National Banking Association organized and existing under the laws of the Office of the Comptroller of the Currency, with a main office at 1111 Polaris Parkway, Columbus, Ohio 43240.  Accordingly, pursuant to 28 U.S.C. §1348, Chase Bank is deemed a citizen of Ohio.  Chase Bank regularly transacts business in the Commonwealth of Kentucky and may receive service of process through any officer.

JURISDICTION AND VENUE

10.     This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C.

        §§1331 and 1337 in that Plaintiff, on his own behalf and on behalf of the Class,

        asserts claims under the Consumer Credit Protection Act, 15 U.S.C. §§1601 *et*

        *seq*.

11.     This Court has supplemental jurisdiction over the state law claims raised herein

        pursuant to 28 U.S.C. §1367.

12.     Venue in this Court is proper pursuant to 28 U.S.C. §1391 as a substantial part of

        the events giving rise to the claim occurred in this judicial district.


FACTUAL BACKGROUND COMMON TO ALL CLASS MEMBERS

13.     On information and belief, JPMorgan Chase & Co. is a financial holding company

        incorporated under Delaware law in 1968, and is one of the largest banking

        institutions in the United States with operations in more than sixty countries.

14.     On information and belief, Chase Bank is one of JPMorgan Chase & Co.'s bank

        subsidiaries.

15.     Chase Bank operates sixty-five offices within the Commonwealth of Kentucky

        and twenty-eight offices within Jefferson County, Kentucky.

16.     Chase Bank offers HELOC lending to consumer borrowers like Plaintiff and the

        Class in the Commonwealth of Kentucky.

17.     On information and belief, when Chase Bank engages in HELOC lending, it

        requires consumer borrowers like Plaintiff and the Class to mortgage their

        personal residences to provide Chase Bank with collateral for the indebtedness.

18. Plaintiffs' and, upon information and belief, the typical Chase Bank HELOC agreement provides that a suspension or reduction in the credit limit may be changed only if "[t]he value of your property declines significantly below the property's appraised value for purposes of this Credit Line Account. This includes, for example, a decline such that the initial difference between the Credit Limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances." See Exhibit A, at page 4.

19. In or around May 15, 2009, Chase Bank began summarily lowering its HELOC borrowers lines of credit, and began sending some or all of them form letters reflecting this action. Plaintiffs' letter specifically stated:

> At Chase we are committed to helping customers achieve and sustain homeownership, and we're doing everything we can to help homeowners ensure that they don't borrow more than their home is worth. With home values falling in many parts of the country, we've used a proven valuation method to estimate your home's value at $211,000. Unfortunately, that valuation no longer supports the full amount of your Line of Credit, so we are suspending future draws against your account as of May 15, 2009.

> We appreciate that you have handled your home equity account responsibly, and want to make sure you know this change is occurring because of the significant decline in your property value.

See "Suspension Notice" attached at Exhibit B. Chase Bank did not perform any individualized assessment of borrower's home values to determine any depreciation in value, but instead, on information and belief, employed an unreliable and/or inaccurate automated valuation modeling ("AVM") formula with unreliable and/or inaccurate analyses designed to reach a predetermined

result.  Chase Bank sent a Suspension Notice to Plaintiffs and, on information and belief, the Class whose home value had not significantly declined.

20. On information and belief, Chase Bank used an alleged appraisal of consumer borrowers,' like Plaintiff's and the Class,' personal residences to justify a suspension of draws on HELOCs, but the appraisals did not reflect a significant decline in property value to trigger the suspension clause of the HELOC agreement.

21. On information and belief, Chase Bank unilaterally predetermined to reduce the acceptable loan-to-value ("LTV") ratio for its HELOC loans to seventy percent based upon the total mortgage indebtedness on Plaintiffs' and, on information and belief the Class's, personal residence in violation of federal statutes and regulations, and in violation of the HELOC agreement, because no contractual provision allows for the unilateral change of the "initial difference between the Credit Limit and the available equity."

22. On June 11, 2009, an agent of Chase Bank named "Elegha" told Plaintiffs that Chase Bank reduced the acceptable LTV ratio for Plaintiffs' HELOC from 94% to 70% .

23. On information and belief, the AVM was predetermined to reduce credit limits to match a seventy percent LTV.

24. Chase Bank's systematic reduction of HELOC limits was unlawful.  Federal law prohibits a lender from reducing the credit limit without first assessing the value of the specific property or otherwise having a sound basis for suspending or reducing the credit limit.  The Office of Thrift Supervision has warned financial

institutions, like Chase Bank, that it would violate federal law to reduce the credit

limits of all HELOC accounts in a geographic area in which real estate values are

generally declining without assessing the value of the collateral that individually

secures each affected HELOC account. *Office of Thrift Supervision: Guidance on*

*Home Equity Lines of Credit,* OTS 08 038 (Aug. 26, 2008).

25.      Chase Bank did not provide HELOC borrowers with information regarding how

the property value was determined or what property value would be required to

reinstate the full credit limit in the Suspension Notice.

26.      The Suspension Notice provided for "an appeal process" if a borrower disagreed

with the decline in property value:

> We offer an appeals process. If you disagree with the decline in
> property value, it will be your responsibility to call us at 1-866-
> 405-4988 to initiate your appeal. We will put you in contact with a
> third-party independent appraisal management company to order
> an appraisal of your property. When completed, the appraisal
> company will send the completed appraisal directly to you. **The
> completed appraisal, along with a written request for
> reinstatement, should be faxed *by you* to 1-866-221-0655 (toll
> free)** or mailed to the address below, for review. [Address
> omitted.]

> We will respond to all properly-submitted appeals within 30 days
> of receipt. Any reinstatement of the credit line will be at our
> discretion and may be subject to other conditions that prevent
> reinstatement (emphasis in original).

> The cost [of an appraisal] varies based on the type of appraisal
> service your property will require. You will be responsible for
> paying the appraisal fee. The appraisal company will review the
> type and cost with you before starting work.

See Suspension Notice at Exhibit B.

27.      The Suspension Notice failed to contain adequate information to allow a borrower

to determine whether he or she should challenge the credit reduction and spend

7

the time and resources to obtain and pay for an appraisal, and there was no reasonable certainty that the appraisal would be properly considered by Chase Bank.

28.    Chase Bank's action is unconscionable and unfair because it is depriving borrowers access to consumer credit despite the borrowers, like Plaintiffs, have continued to meet their contractual obligations in this troubled economy. Chase Bank's actions are particularly troubling in light of the role its sister subsidiary Bear Stearns & Co. Inc. played in this current crisis, and in light of its receipt of taxpayer relief funds under the Emergency Economic Stabilization Act of 2008, Pub.L. No. 110-343, on October 28, 2008.

## ALLEGATIONS AS TO PLAINTIFFS' INDIVIDUAL CLAIMS

29.    Chase Bank and Plaintiffs entered into a HELOC agreement on October 14, 2005. See Exhibit A. Under the terms of that HELOC, Chase Bank provided Plaintiffs a $50,000 line of credit. Plaintiffs' HELOC was secured by a mortgage on their primary residence, which is located in Louisville, KY.

30.    On or about May 15, 2009, Chase Bank mailed Plaintiffs a letter indicated that Chase Bank had suspended Plaintiff's credit limit. The letter stated that Chase Bank was "suspending future draws against your account" based on "the significant decline in your property value." See Exhibit B.

31.    Plaintiffs' HELOC with Chase Bank was their primary line of credit. The suspension denied Plaintiffs access to credit and increased the ratio of credit used to the amount of credit available to Plaintiffs, which in turn, on information and

belief, resulted in an increase in their Credit Utilization Rate ("CUR"), a major factor in their credit rating, causing damage to Plaintiffs' credit rating and increasing the cost of credit to them.

## CLASS CERTIFICATION ALLEGATIONS

32. Plaintiffs seek certification of a class under both Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure.

33. **Definition of the Class:** Plaintiffs bring this action on their own behalf and on behalf of the following class ("the Class") of persons in the Commonwealth of Kentucky:

   a. who had a HELOC with Defendant; and

   b. whose HELOC was reduced or suspended by Defendant because Defendant concluded that there had been "a substantial decline in the value of the property securing the Account," or words of similar effect, or whose HELOCs were reduced on the same grounds as those who received such a letter, regardless of the actual receipt of such a letter.

Excluded from the Class are the Defendant; officers, directors or employees of Defendant; any entity in which Defendant has a controlling interest; the affiliates, legal representatives, attorneys, heirs or assigns of Defendant; and any federal, state, or local governmental entity; persons who properly execute and file a timely request for exclusion from the class; the legal representatives, successors or assigns of any such excluded persons; and any judge, justice, or judicial officer

presiding over this matter and the members of their immediate families and judicial staffs. Plaintiffs reserve the right to modify or amend this Class definition if discovery and/or further investigation so necessitate.

34. **Numerosity:** The exact number of the members of the Class is unknown and not available to Plaintiffs, but it is clear that individual joinder is impracticable. Defendant sent its generic Suspension Notice to thousands of mortgagors and a substantial percentage of the recipients of these letters fall into the definition of the Class. Class members can be easily identified through Defendant's records and public records.

35. **Commonality:** Common questions of fact and law exist as to all members of the Class and predominate over the questions affecting only individual members. These common questions include:

(a) What were Defendant's criteria for reducing or suspending credit limits on its HELOCs;

(b) What were Defendant's methods for valuing the subject properties securing the HELOCs;

(c) Whether Defendants' reduction or suspension of the credit limits of the HELOCs, including the notice provided with respect to such reduction, violated the Truth-in-Lending Act and related regulations;

(d) Whether Defendant's reduction or suspension of the credit limits breached the terms of its HELOC agreements with Class members;

(e) Whether Defendant's reduction or suspension of the credit limits on its HELOCs, including the notice provided with respect to such reduction violated the Kentucky Consumer Protection Act;

(f) Whether Defendant's reduction or suspension of the credit limits on its HELOCs was unfair;

(g) Whether Defendant gave proper notice to Class members that their HELOCs were being reduced;

(h) Whether Defendant's actions in, among other things, requiring customers to obtain and pay upfront for property appraisals violated the implied covenant of good faith and fair dealing; and

(i) Whether Plaintiff and the Class are entitled to relief, and the nature of such relief.

36.   **Typicality:**  Plaintiffs' claims are typical of the claims of other members of the Class, as Plaintiffs and other Class members sustained damages arising out of the wrongful and unlawful conduct of Defendant, based upon the same transactions which were made uniformly to Plaintiff and the public.

37.   **Adequate Representation:**  Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class and has retained counsel competent and experienced in complex litigation and class actions.  Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

38.   **Predominance and Superiority:**  This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair

and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the wrongful and unlawful actions of Defendant. It would be virtually impossible for the individual members of the class to obtain effective relief from the misconduct of Defendant. Even if members of the Class themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be promoted and uniformity of decisions will be ensured.

39. **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole. The policies of Defendant challenged herein apply and affect members of the Class, and Plaintiffs' challenge of these policies hinges on Defendant's conduct, not on facts or law applicable only to Plaintiffs.

<u>CAUSES OF ACTION</u>

12

<u>COUNT I – Violation of TILA and Regulation Z</u>

40.     Plaintiffs incorporate Paragraphs 1 through 40 as if fully set forth herein.

41.     The Truth-in-Lending Act ("TILA") and its implementing regulation (Regulation Z) prohibit Defendant from changing any of the terms of a mortgage or HELOC including, but not limited to, the credit limit. 15 U.S.C. § 1647(c)(1); 12 C.F.R. § 226.5b(f)(3). There is a relevant exception under TILA and the Regulation Z for "any period in which the value of the consumer's principal dwelling which secures any outstanding balance is significantly less than the original appraisal value of the dwelling" which permits Defendant to reduce the credit limits on its HELOCs. 15 U.S.C. § 1647(c)(2)(B); 12 C.F.R. § 226.5b(f)(3) (vi)(A).

42.     TILA and Regulation Z prohibit Defendant from reducing the credit limit or suspending the draws of its HELOCs unless the value of the home securing the credit line has actually declined significantly. The Federal Reserve Board's Official Staff Commentary to Regulation Z defines "significant decline" for purposes of § 226.5b(f)(3) (vi)(A) as a decline in home value so that "the initial difference between the credit limit and the available equity (based on the property's appraised value for the purposes of the plan is reduced by fifty percent." The Official Staff Commentary further states that Regulation Z "does not require a creditor to obtain an appraisal before suspending credit privileges [but] a significant decline must occur before suspension can occur." On August 26, 2008, the Office of Thrift Supervision issued official guidance that warned it would violation Regulation Z to "reduce the credit limits of all HELOC accounts in a geographic area in which real estate values are generally declining without

13

assessing the value of the collateral that secures each affected HELOC account." *Office of Thrift Supervision: Guidance on Home Equity Lines of Credit*, OTS 08 038 (Aug. 26, 2008).

43.     Defendant violation TILA and Regulation Z by reducing and suspending Plaintiffs' HELOC credit limit, and those other Class members, in the absence of any "significant decline" in the value of the subject properties. On information and belief, neither Plaintiffs' property nor the property of the Class members has significantly declined in value.

44.     Rather, upon information and belief, Defendant knowingly and intentionally used a variety of uncertain and fundamentally unreliable data (including the general decline of property values in broad geographic areas and other mathematical inputs) to value its customers' homes in order to attempt to justify blanket reductions on its HELOC limits. Upon information and belief, the methodology used with respect to Defendant's AVM HELOC modeling is inaccurate and unsubstantiated, making its use unfair, deceptive, and readily subject to manipulation.

45.     On information and belief, Defendant or its agents acting under Defendant's direction and control, failed to, among other acts or omissions:(a) disclose the reasoning and basis behind the use of the AVM-derived property value; (b) disclose the value necessary to reinstate the HELOCs; (c) validate their AVMs on a periodic basis to mitigate the potential valuation uncertainty; (d) properly document the AVM's analysis, assumptions, and conclusions; (e) appropriately back-test representative samples of the AVMs against market data on actual sales;

(f) account fairly for improvements, property type, or geographic comparables; and/or (g) take other necessary steps to reasonably verify the accuracy of the AVMs.

46.     Defendant's failure to specifically value the property of each Class member and failure to use reliable valuation method constitute violations of TILA and Regulation Z.

47.     Defendant's violations of TILA and Regulation Z damaged Hickman and the other Class members.  These damages occurred in the form of denial of the full use of the bargained-for benefit of the HELOCs, appraisal fees, increased price of credit, adverse effects on credit scores, loss of interest and other damages.

48.     Plaintiffs, on their own behalf and on behalf of the other Class members, seek actual damages under 15 U.S.C. § 1640(a)(1), statutory damages under 15 U.S.C. § 1640(a)(2)(B), and the costs of the action, together with reasonable attorneys' fees under 15 U.S.C. § 1640(a)(3), in an amount to be determined at trial.

## COUNT II – Declaratory Relief Under TILA and Regulation Z

49.     Plaintiffs incorporate Paragraphs 1 through 49 as if fully set forth herein.

50.     Plaintiffs bring this Count in the alternative to Count I and seek declaratory relief in the event this Court finds at any time that damages or other remedies under TILA, as prayed for in Count I, would be inadequate to fully compensate Plaintiffs and the Class members or would otherwise be inadequate to fully address Defendant's ongoing or future violations of TILA with respect to its existing and future borrowers.

51. Defendant reduced or suspended the credit limit for Plaintiffs and other Class members' HELOCs. Contrary to Defendant's purported explanation, the homes securing the HELOCs for Plaintiffs and other Class members did not significantly decline in value. Defendant also used improper formulas and relied on fundamentally unreliable data to value its mortgagors' homes in order to justify blanket reductions on its HELOC limits.

52. Defendant's reduction or suspension of the credit limit for Plaintiffs and other Class members' HELOCs violated TILA and Regulation Z.

53. The Class and Defendant have adverse legal interests, and there is a substantial controversy between the Class and Defendant of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether Defendant's mass reduction or suspension of HELOC credit limits and improper property valuation techniques violate TILA and Regulation Z.

54. In the event this Court should at any time find that damages or other remedies under TILA would be inadequate to fully compensate Plaintiff and the Class members or would be inadequate to otherwise fully address Defendant's ongoing or future violations of TILA, Plaintiffs, on their own behalf and on behalf of the other Class members, seek a declaratory judgment under 27 U.S.C. § 2201 that Defendant's mass reduction of HELOC credit limits in the absence of a significant decline in property value violates TILA and Regulation Z.

COUNT III – Breach of Contract

55. Plaintiffs incorporate Paragraphs 1 through 55 as if fully set forth herein.

56.     Plaintiffs and the other Class members obtained HELOCs from Defendant. The terms of these HELOCs constitute a contract between the Class members and Defendant.

57.     The Defendant's HELOC agreements contain a term that purports to permit it discretion to reduce the credit limit if "(1) the value of your property [securing the HELOC] declines significantly below the property's appraised value for purposes of this Credit Line Agreement." Defendant drafted the HELOCs, and the phrase "declines significantly" should be construed against Defendant. See Exhibit ____.

58.     Plaintiffs and the other Class members performed in full under their HELOC agreements with Defendant. They made the payments due to Defendant under the HELOC agreements and otherwise complied with the terms of the HELOC agreements.

59.     The credit limit under the Class members' HELOC agreements was a material term of the contract between Class members and Defendant. Defendant materially breached the terms of the HELOC agreements by reducing the credit limit for Plaintiffs' and the other Class members' HELOCs where no significant decline in value had first occurred.

60.     Plaintiffs and the other Class members have suffered damages in the form of being denied the full use of the bargained-for credit limits, appraisal fees, the increased price of credit, adverse effects on their credit score, loss of interest, and other damages.

61.     Plaintiffs, on their own behalf and on behalf of the other Class members, seek actual and compensatory damages for Defendant's breach of contract, as well as interest, attorneys' fees, and costs in an amount to be determined at trial.

COUNT IV – Violation of Kentucky Consumer Protection Act

62.     Plaintiffs incorporate Paragraphs 1 through 62 as if fully set forth herein.

63.     Plaintiffs and the Class members purchased services primarily for personal, family or household purposes when they contracted with Defendant for HELOCs.

64.     Defendant's wrongful acts, as set forth throughout this Class Action Complaint, constitute unfair, false, misleading, and deceptive acts and practices in the conduct of consumer lending and the provision of consumer credit in violation of the Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.170.

65.     As a direct and proximate result of Defendant's unlawful practices, Plaintiffs and the other Class members suffered actual damages in the form of being denied the full use of the bargained-for credit limits, appraisal fees, the increased price of credit, adverse effects on their credit score, loss of interest, and other damages.

66.     Plaintiffs, on their own behalf and on behalf of the other Class members, seek actual and compensatory damages for Defendant's violation of the Kentucky Consumer Protection Act, as well as interest, attorneys' fees, and costs as provided for in K.R.S. § 367.220(3) in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray for relief as follows:

(i)      Certifying the action as a class action and designating Plaintiffs and their counsel as representatives of the Class;

(ii)     Awarding statutory damages under 15 U.S.C. § 1640(a)(2)(B) for Count I;

(iii)    Entering declaratory judgment under 28 U.S.C. § 2201 on Count II that Defendant's HELOC reductions or suspensions violate federal law;

(iv)     Awarding damages for the Class on the Counts I, III, and IV, including actual compensatory damages for appraisal costs, negatively impacted credit scores, the denial of the full bargained-for benefits of the HELOCs, the increased cost of credit, lost interest, and other damages in an amount to be determined at trial;

(v)      Awarding equitable and injunctive relief for the Class, including enjoining the Defendant from further violations of TILA and Regulation Z, restoration of the HELOC credit limits, the restitution of property gained through deceptive business practices alleged herein, and an accounting of such property;

(vi)     Awarding Plaintiffs and the Class reasonable costs and attorneys' fees;

(vii)    Awarding pre- and post-judgment interest;

(viii)   Awarding punitive damages; and

(ix)     Granting such other and further relief as the Court may deem just and proper.


Respectfully submitted,

/s/ John H. Dwyer, Jr.
John H. Dwyer, Jr.                          /s/ Hal. D. Friedman
David N. Hise                               Hal D. Friedman
ZIELKE LAW FIRM, PLLC                       Cooper & Friedman, PLLC
462 South 4th Street                        1448 Gardiner Lane, Suites 301-303
Suite 1250                                  Louisville, Kentucky 40213
Louisville, KY 40202                        (502) 459-7555
(502) 589 – 4600                            (502) 451-1698 (fax)
jdwyer@zielkefirm.com                       hdf@cooperandfriedman.com